## ADJUSTMENT OF TERMS AGREEMENT

| Borrower(s) (Name and Address) | Lender (Name and address) | Account No. |
|---|---|---|
| Carla Courtney<br>3708 Secrest Shortcut Rd<br>Monroe, NC 28110 | One Main Financial<br>6400 Las Colinas Blvd C2-40<br>Irving, TX. 75039 | ▮▮▮▮▮<br>Date<br>11/26/2013 |

This Adjustment of Terms Agreement ("Agreement") is made this _____ 11/26/2013 _____
(the "Effective Date") by and between _____ Carla Courtney _____ ("Borrower") and
One Main Financial to amend and supplement the Disclosure Statement, Note and Security
Agreement, or Note, as applicable, (the "Note"), and applicable riders, if any, executed by
Borrower dated _____ 5/29/2010 _____ in the original principal amount of _____ $47,109.82 _____ .

Borrower acknowledges that Lender is the holder and the owner of the Note and understands
the Lender may transfer the Note, as amended by this Agreement, and that anyone who takes
the Note by transfer and who is entitled to receive payments under the Note is called the
"Lender" in this Agreement.

[ x ]          If checked, the Note is secured by real and/or personal property pursuant
to a Mortgage, Deed of Trust, Deed to Secure Debt or other security agreement (the "Security
Instrument") dated _____ 5/29/2010 _____ .Said Security Instrument conveys the real and/or personal
property described in such security instrument (the "Property").

Borrower now requests to extend and rearrange the time and manner of repayment of the Note
and to extend and carry forward the lien(s) on the Property, if any, Lender has agreed to
Borrower's request.

For and in consideration of the mutual promises and agreements exchanged, the parties hereto
agree as follows (notwithstanding anything to the contrary contained in the Note or Security
Instrument):

1. Acknowledgment of Principal Balance: Borrower acknowledges that as of the Effective Date
and except for the additional amounts described in paragraph below, the amount payable under
the Note and secured by the Security Instrument, if any, is:
_____ $45,862.96 _____ ("Unpaid Principal Balance")

The Borrower acknowledges and agrees that in addition to the Unpaid Principal Balance described
above, Borrower is currently obligated to Lender for additional charges in the amount of
_____ $3,848.68 _____ herein referred to as the "Deferred Amount." This amount could include
principal forbearances, accrued and/or deferred interest, advances made by Lender for real estate
taxes and/or hazard insurance premiums ("Escrow Advances"), appraisal fees, attorney's costs and
other legal fees if any, and any other unpaid fees that may have accrued under the terms of Note.
The Deferred Amount has accrued or been incurred under the terms of the loan documents and/or
Security Instrument or under the terms of this Agreement.

The Deferred Amount is in addition to the Unpaid Principal Balance. The Deferred Amount shall
continue to be due and owing by Borrower to Lender in accordance with the terms of the Note, the
Security Instrument, and this Agreement except that no interest is charged on the Deferred Amount;
provided however, Lender agrees that for so long as Borrower makes principal and interest payments
in a timely manner and ultimately pays the Deferred Amount to the extent obligated under the terms
of Note and Security Instrument, Lender will not seek to enforce its right to collect under the Note
or Security Instrument solely for the failure to pay the Deferred Amount. If not sooner demanded,
the Deferred Amount shall be due and payable upon the earlier of voluntary payoff or the Revised
Maturity Date set forth in Section 2 below. In addition to the Original Principal Balance and
Deferred Amount, Borrower is also responsible for any unpaid late fees, which are reflected on the
monthly billing statement.

2. <u>Repayment Terms</u>: Borrower promises to pay the Unpaid Principal Balance, plus interest, to the Lender according to the following terms:

| | |
|---|---|
| Revised Interest Rate | 5.0000 |
| Revised Monthly Payment | $414.30 |
| (not including monthly insurance premiums or escrow, if applicable) | |
| Due Date of First Revised Payment | 1/4/2014 |
| Remaining Months | 324 |

The Revised Maturity Date is based upon the principal balance projected to exist at the time the Revised Interest Rate expires and the Revised Monthly Payment, and assumes Borrower makes timely payments as scheduled without future modification of the remaining loan terms. All amounts still owed by Borrower under the Note and Security Instrument, including any unpaid Deferred Amounts under this Agreement or any prior Adjustment of Terms Agreement(s), are due and payable on the Revised Maturity Date. The Interest Rate is based on Daily Simple Interest, as agreed to and described under the original Note and will accrue each day including during and after this Agreement is effective.

*Notice Regarding Daily Simple Interest. Your mortgage continues to utilize the "daily simple interest" method in applying mortgage payments. This means interest accrues daily on the outstanding principal balance. Under the "daily simple interest" method, your monthly mortgage payment due may vary and the payment disclosed in this Section 2 is only a guide to illustrate changes to your payment due to this Agreement.

Please refer to your Note and Security Instrument for additional information regarding daily simple interest.

3. <u>Additional Terms</u>:

a. If the Note is a precomputed loan, it is hereby converted to an interest bearing loan, which means simple interest will accrue on the Unpaid Principal Balance each day until the loan is paid in full.

b. If the Note is a variable rate loan, it is hereby converted to a fixed rate loan and the payment and interest rate will not increase or decrease other than as provided for in this Agreement, for the remainder of the life of the loan.

c. By executing this Agreement, Borrower waives any rate reduction to which Borrower may have otherwise been entitled under the terms of the Note, any Rate Reduction Rider or similar rider to the Note

d. Although the loan has been modified and the original loan term has been adjusted, this does not change the amount of coverage or terms of the insurance originally written in connection with Borrower's loan. For those who purchased a monthly insurance product, the monthly premium will be added to the monthly loan amount described in paragraph 2 and will be indicated on the monthly statements. Purchased insurance coverage remains in force according to the original certificate or policy issued regardless of any rescheduling and/or adjustment of loan payments or extension by Lender. Further, the insurance may not cover as much of the debt and/or loan payment as it might have before the loan was rescheduled, adjusted or extended and the insurance may expire before the loan is paid in full.

e. If Borrower currently participates in automated payments, Lender may continue automatic drafts for the payment amount agreed to under the original Note unless Borrower requests that Lender update the automatic draft to withdraw the lower payment agreed to by the parties in this Agreement.

f. It is the intention of the parties that all liens and security interests described in the Security Instrument, if any, are hereby renewed and extended until the Indebtedness evidenced by the Note, as renewed, modified and extended hereby has been fully paid. Lender and Borrower agree that such extension, renewal, amendment, modification, or rearrangement shall in no manner affect or impair the Note or the lien and security interests securing the same, if any, the purpose of this Agreement being simply to extend, modify, amend or rearrange the time and manner of payment of the Note and the indebtedness evidenced thereby, and to carry forward all liens and security interests securing the Note, if any, which expressly acknowledged by the Borrower to be valid, subsisting and in full force and effect so as to fully secure the payment of the Note.

g. As amended hereby, the provisions of the Note and Security Instrument, if any, shall continue in full force and effect, and the Borrower acknowledges and reaffirms Borrower's obligations to Lender thereunder. In the event of an inconsistency between this Agreement and the terms of the

Note and Security Instruments, if any, this Agreement shall govern. Nothing in this Agreement shall be construed to be a satisfaction or release in whole or in part of the Note and Security Instruments, if any. Except as specifically provided for in this Agreement, the Note and Security Instruments, if any, will remain unchanged and the Borrower and Lender will be bound by, and comply with, all of the terms and provisions thereof, as amended by this Agreement. Any default by the Borrower in the performance of its obligations under this Agreement shall constitute a default under the Note and Security Instrument, if any, and shall allow Lender to exercise all of its remedies set forth in the Note and/or Security Instrument.

h. Borrower acknowledges that the monthly payments on the Note, as modified and set forth in this Agreement do not include any required escrow payments for taxes and insurance or other payments. Borrower acknowledges and agrees that in the event that Escrow Advances are included in the amount owed set forth in this Agreement and such Escrow Advances are returned to the Lender for any reason, then the amount of such Escrow Advances returned to the Lender may be applied to Borrower's escrow account, to reduce the amount of the Unpaid Principal Balance, and/or to reduce the amount of the Deferred Amount, at the Lender's sole discretion, regardless of whether those Escrow Advances are placed in the Unpaid Principal Balance or in the Deferred Amount under this Agreement

i. Nothing in this Agreement shall be construed to impose personal liability to repay any obligation under the Note, as modified by this Agreement, on any Borrower whose obligations have been discharged in Bankruptcy.

j. Borrower acknowledges that the Deferred Amount set forth above may not be reflected in the loan amount reported by Lender to any credit reporting agency or reported as part of the balance on any receipt or statement issued by Lender, but nevertheless, Borrower acknowledges that such Deferred Amount is due and payable set forth above.

k. No Oral Agreements: The written Loan Agreements represent the final agreements between the parties and may not be contradicted by evidence of prior, contemporaneous, or subsequent oral agreements of the parties. There are no unwritten oral agreements between the parties.

l. This Agreement will be valid upon receipt by Lender of a signed copy from Borrower. A duplicate copy of this agreement has been provided to Borrower, and shall be retained as evidence of the terms of the Agreement. The Agreement does not need to be countersigned by Lender to be in force. Evidence of the change, if any, in the payment will be evident in the next full billing cycle statement.

| _____ | 11-30-13 |
| Borrower | Date |

| _____ | _____ |
| Borrower | Date |

May 29, 2010                                        MONROE                    NC
[Date]                                              [City]                    [State]

3708 SECRECT SHORTCUT RD
                                        MONROE          NC      28110
[Property Address]

## 1.  BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $   47,109.82   (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is CITIFINANCIAL SERVICES, INC. . I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2.  INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 12.4824 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note. After the Maturity Date established in Section 3, I will pay interest at the interest rate required by this Section 2 or the maximum rate permitted under the then applicable law.

## 3.  PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the  4th  day of each month beginning on  July    4th , 2010 . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on  June 04, 2040 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 1809 DICKERSON BLVD  MONROE NC   28110 or at a different place if required by the Note Holder.

### (B)  Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $   502.14 .

## 4.  BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note.

If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5.  LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6.  BORROWER'S FAILURE TO PAY AS REQUIRED

### (A)  Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of  0  calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be   0.0 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B)  Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C)  Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D)  No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time. If the Note Holder does not require me to pay all or part of any charge for any overdue or returned payment, it will still have the right to charge the full charge on any other overdue or returned payment. The Note Holder may accept payments after the Maturity Date or after the date the Note Holder requires me to pay immediately in full without being required to renew or extend the loan, and may extend the time for payment after maturity without notice. The Note Holder may delay enforcing any of its other rights under this Note without losing them. The terms of this Note can be waived or changed only in a writing signed by Note Holder.

### (E)  Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

Borrower's Initials: _____

(F)  **Charge for Returned Payment**

If any payment that I make by check, draft, or similar instrument is returned to the Note Holder unpaid, I will pay a returned payment charge to the Note Holder. The amount of the charge will be U.S. $ 25.00 .

**7.  GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3 (A) above or at a different address if I am given a notice of that different address.

**8.  OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note. Any one of us can agree to extensions, renewals, or changes in the terms of this Note (which may include releasing security or adding or releasing other parties to this Note), without notice to others. Any such agreement will not relieve any of us from responsibility under this Note.

**9.  WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10.  UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all  sums  secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**11.  APPLICABLE LAW**

This Note is governed by NORTH CAROLINA law and federal law, as applicable. If any part of this Note is unenforceable, this will not make any other part unenforceable. In no event will I be required to pay interest or charges in excess of those permitted by law.

**12.  AUTHORIZATION TO USE CREDIT REPORT**

I authorize Note Holder to obtain, review and use information contained in my credit report in order to determine whether I may qualify for products and services offered by Note Holder. This authorization terminates when my outstanding balance due under this Note, along with any additional amounts that I may owe under the Security Instrument that I am giving to secure this Note, is paid in full. I may cancel this authorization at any time by writing to the following address: CitiFinancial – Customer C.A.R.E. Department, 605 Munn Road, Fort Mill, SC 29715. In order to process my request, I must provide Note Holder my full name, address, social security number and account number.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
CARLA R COURTNEY                - Borrower

_____ (Seal)
                               - Borrower

_____ (Seal)
                               - Borrower

05/29/2010          09:26:53          *[Sign Original Only]*

# NOTE ALLONGE

This indorsement is incorporated into and shall be deemed part of the Note to which it is attached

Loan Number*

*as of the date of this Note Allonge*

Borrower Name(s)   CARLA R COURTNEY

Date of Loan          05/29/2010
Amount of Loan      $47,109 82
Property Address     3708 SECREST SHOTCUT RD
City, State, Zip        MONROE, NC  28110

Pay to the order of

**CitiFinancial Servicing LLC** (a Delaware limited liability company)

Without recourse

**CFNA Receivables (DE), Inc. f/k/a CitiFinancial Services, Inc.** (a Delaware corporation)

By _____

Raymond White
Vice President

CFN Loan Numbe
Bayview Loan Numbe

## **ALLONGE TO NOTE**

Original Loan Amount: $47,109.82
Note Date:              05/29/2010
Borrower(s):            CARLA R COURTNEY
Address:                3708 SECREST SHORTCUT RD
                        MONROE, NC 28110

### PAY TO THE ORDER OF

_____

_____

_____

### WITHOUT RECOURSE

CITIFINANCIAL SERVICING LLC, A DELAWARE LIMITED LIABILITY COMPANY

By: _____     Dated: MAR 2 2 2016 _____
Name: **Susan Schotsch**
Title:  **VICE PRESIDENT**

BV#

ALLONGE TO NOTE

FOR PURPOSES OF FURTHER ENDORSEMENT OF THE NOTE REFERRED TO BELOW:

BORROWER: CARLA COURTNEY

ORIGINAL PRINCIPAL BALANCE: $47,109.82

ORIGINAL NOTE DATE: 5/29/2010

PROPERTY ADDRESS: 3708 SECREST SHORTCUT RD MONROE NC 28110


PAY TO THE ORDER OF:
**Bayview Dispositions IVa, LLC**

WITHOUT RECOURSE
**BAYVIEW LOAN SERVICING, LLC**

BY:_____

    NAME: LEONARDO NUNEZ

    TITLE: Assistant Vice President

BV#

ALLONGE TO NOTE

FOR PURPOSES OF FURTHER ENDORSEMENT OF THE NOTE REFERRED TO BELOW:

BORROWER: CARLA COURTNEY

ORIGINAL PRINCIPAL BALANCE: $47,109.82

ORIGINAL NOTE DATE: 5/29/2010

PROPERTY ADDRESS: 3708 SECREST SHORTCUT RD MONROE NC 28110

PAY TO THE ORDER OF:
**Wilmington Savings Fund Society, FSB, D/B/A Christiana Trust as Owner Trustee of the
Residential Credit Opportunities Trust III**

WITHOUT RECOURSE
**Bayview Dispositions IVa, LLC**

BY:_____

    NAME: **LEONARDO NUNEZ**

    TITLE: Assistant Vice President

FILED
UNION COUNTY, NC
CRYSTAL CRUMP
REGISTER OF DEEDS

| | |
|---|---|
| FILED | Jun 04, 2010 |
| AT | 10:00 am |
| BOOK | 05341 |
| START PAGE | 0836 |
| END PAGE | 0847 |
| INSTRUMENT # | 13491 |
| EXCISE TAX | (None) |

TAW

——————— [Space Above This Line For Recording Data] ———————

## DEED OF TRUST

SATISFACTION: The debt secured by the within Deed of Trust together with the Note secured thereby has been satisfied in full.

This the _____ day of _____ , ___ .

Signed: _____

By: _____

Tax Parcel Identifier No. _____

Recording: Time, Book and Page

This Instrument prepared by: ANGELA PALMER
When recorded, return to:
(Fink)
Fink/ Recording Team
Accommodation Recording per Client Request
7060 Samuel Morse Dri
Columbia, MD 21046

### DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21.  Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated May 29, 2010 together with all Riders to this document.

(B) "Borrower" is
CARLA R. COURTNEY

Borrower is the trustor under this Security Instrument.

(C) "Lender" is CITIFINANCIAL SERVICES, INC.
Lender is a corporation organized and existing under the laws of Delaware
Lender's address is 1909 DICKERSON BLVD   MONROE NC   28110
Lender is the beneficiary under this Security Instrument.

(D) "Trustee" is
ANGELA PALMER

(E) "Note" means the promissory note signed by Borrower and dated May 29, 2010
The Note states that Borrower owes Lender
FORTY-SEVEN THOUSAND ONE HUNDRED NINE AND 82/100 DOLLARS
(U.S.$   47,109.82   ) plus interest.  Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than June 04, 2040

(F) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

NORTH CAROLINA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT   Form 3034   1/01
NC11036-2 4/2010Original (Recorded)   Copy (Branch)   Copy (Customer)page 1 of 12

CARLA R COURTNEY                                                    05/29/2010

(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The
following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider        ☐ Condominium Rider              ☐ Second Home Rider
☐ Balloon Rider                ☐ Planned Unit Development Rider ☐ Other(s) [specify] _____
☐ 1-4 Family Rider             ☐ Biweekly Payment Rider

(I)    "Applicable Law" means all controlling applicable federal, state and local statutes,
regulations, ordinances and administrative rules and orders (that have the effect of law) as well
as all applicable final, non-appealable judicial opinions.

(J)    "Community Association Dues, Fees, and Assessments" means all dues, fees,
assessments and other charges that are imposed on Borrower or the Property by a condominium
association, homeowners association or similar organization.

(K)    "Electronic Funds Transfer" means any transfer of funds, other than a transaction
originated by check, draft, or similar paper instrument, which is initiated through an electronic
terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize
a financial institution to debit or credit an account. Such term includes, but is not limited to,
point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone,
wire transfers, and automated clearinghouse transfers.

(L) "Escrow Items" means those items that are described in Section 3.

(M)    "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or
proceeds paid by any third party (other than insurance proceeds paid under the coverages
described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or
other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or
(iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(N)   "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or
default on, the Loan.

(O)    "Periodic Payment" means the regularly scheduled amount due for (i) principal and
interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(P)    "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and
its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended
from time to time, or any additional or successor legislation or regulation that governs the same
subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and
restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan
does not qualify as a "federally related mortgage loan" under RESPA.

(Q)    "Successor in Interest of Borrower" means any party that has taken title to the Property,
whether or not that party has assumed Borrower's obligations under the Note and/or this
Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals,
extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and
agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably
grants and conveys to Trustee and Trustee's successors and assigns, in trust, with power of sale,
the following described property located in the County of                     UNION  :
ALL THAT CERTAIN PARCEL OF LAND IN  , UNION COUNTY, STATE OF NC, AS
MORE FULLY DESCRIBED IN BOOK 771 PAGE 678 ID# 09253301B, BEING KNOWN
AND DESIGNATED AS WESTERN 180.00 FEET OF LOT 1-8 BLOCK B AVANDALE
PARK SUBDIVISION RECORDED IN PLAT BOOK 3, AT PAGE 80.

BEING THE SAME FEE SIMPLE PROPERTY CONVEYED BY GENERAL WARRANTY DEED
FROM CARL W. COURTNEY SINGLE TO CARLA R. COURTNEY , DATED 03/23/1995
RECORDED ON 03/23/1995 IN BOOK 771, PAGE 678 IN UNION COUNTY RECORDS,
STATE OF NC.

NORTH CAROLINA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT   Form 3434   1/01
NC1104-2 1/01 Original (Recorded)   Copy (Branch)   Copy (Customer) Page 7 of 12

CARLA R COURTNEY

05/29/2010

which currently has the address of 3708 BECKEST SHORTCUT RD

MONROE              , North Carolina 28110        ("Property Address"):

TO HAVE AND TO HOLD this property unto Trustee and Trustee's successors and assigns, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. If Borrower has breached any covenant or agreement in this Security Instrument and Lender has accelerated the obligations of Borrower hereunder pursuant to Section 22 then Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. Application of Payments or Proceeds. Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

NORTH CAROLINA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3034    1/01
NC3034.3 4/03(Original (Recorded)    Copy (Branch)    Copy (Customer)age 3 of 12

CARLA R COURTNEY

05/29/2010

3. Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing.
In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.
Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.
The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.
If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.
Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.
4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.
Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in,

NORTH CAROLINA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT  Form 3034  1/01
NCUI04-3  4/2010 Original (Recorded)  Copy (Branch)  Copy (Customer) (Page 4 of 12

CARLA R COURTNEY

05/29/2010

legal proceedings which In Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5.   Property Insurance.   Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan.

The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

NORTH CAROLINA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT   Form 3834   1/01
NC3104-2  4/2010                                                                                      Page 5 of 12

CARLA R COURTNEY                                          05/29/2010

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

NORTH CAROLINA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT   Form 3034  1/01
NC3034-2  6/09/00Original (Recorded)   Copy (Branch)   Copy (Customer)age 6 of 12

CARLA R COURTNEY                                           05/29/2010

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve, if permitted under Applicable Law, in lieu of Mortgage Insurance.

Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve, if permitted under Applicable Law. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, if permitted under Applicable Law, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

NORTH CAROLINA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT   Form 3034   1/01
NC710M-3  6/3010Original (Recorded)     Copy(Branch)    Copy(Customer)age 7 of 13

CARLA R COURTNEY

05/29/2010

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

NORTH CAROLINA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT   Form 3034   1/01
NC3034-I 6/2010 Original (Recorded)   Copy (Branch)   Copy (Customer)   Page 8 of 12

CARLA R COURTNEY                                                    05/29/2010

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.**
Borrower covenants and agrees that Borrower's obligations and liability shall be joint and
several. However, any Borrower who co-signs this Security Instrument but does not execute the
Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and
convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is
not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that
Lender and any other Borrower can agree to extend, modify, forbear or make any
accommodations with regard to the terms of this Security Instrument or the Note without the
co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who
assumes Borrower's obligations under this Security Instrument in writing, and is approved by
Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument.
Borrower shall not be released from Borrower's obligations and liability under this Security
Instrument unless Lender agrees to such release in writing.  The covenants and agreements of
this Security Instrument shall bind (except as provided in Section 20) and benefit the successors
and assigns of Lender.

**14. Loan Charges.**  Lender may charge Borrower fees for services performed in
connection with Borrower's default, for the purpose of protecting Lender's interest in the
Property and rights under this Security Instrument, including, but not limited to, attorneys' fees,
property inspection and valuation fees.  In regard to any other fees, the absence of express
authority in this Security Instrument to charge a specific fee to Borrower shall not be construed
as a prohibition on the charging of such fee.  Lender may not charge fees that are expressly
prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally
interpreted so that the interest or other loan charges collected or to be collected in connection
with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the
amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected
from Borrower which exceeded permitted limits will be refunded to Borrower.  Lender may
choose to make this refund by reducing the principal owed under the Note or by making a direct
payment to Borrower.  If a refund reduces principal, the reduction will be treated as a partial
prepayment without any prepayment charge (whether or not a prepayment charge is provided for
under the Note).  Borrower's acceptance of any such refund made by direct payment to
Borrower will constitute a waiver of any right of action Borrower might have arising out of
such overcharge.

**15. Notices.**  All notices given by Borrower or Lender in connection with this
Security Instrument must be in writing.  Any notice to Borrower in connection with this
Security Instrument shall be deemed to have been given to Borrower when mailed by first class
mail or when actually delivered to Borrower's notice address if sent by other means.  Notice to
any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly
requires otherwise.  The notice address shall be the Property Address unless Borrower has
designated a substitute notice address by notice to Lender.  Borrower shall promptly notify
Lender of  Borrower's change of address.  If Lender specifies a procedure for reporting
Borrower's change of address, then Borrower shall only report a change of address through that
specified procedure.  There may be only one designated notice address under this Security
Instrument at any one time.  Any notice to Lender shall be given by delivering it or by mailing
it by first class mail to Lender's address stated herein unless Lender has designated another
address by notice to Borrower.  Any notice in connection with this Security Instrument shall not
be deemed to have been given to Lender until actually received by Lender.  If any notice
required by this Security Instrument is also required under Applicable Law, the Applicable Law
requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument
shall be governed by federal law and the law of the jurisdiction in which the Property is located.
All rights and obligations contained in this Security Instrument are subject to any requirements
and limitations of Applicable Law.  Applicable Law might explicitly or implicitly allow the
parties to agree by contract or it might be silent, but such silence shall not be construed as a
prohibition against agreement by contract.  In the event that any provision or clause of this
Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect
other provisions of this Security Instrument or the Note which can be given effect without the
conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and
include corresponding neuter words or words of the feminine gender; (b) words in the singular
shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion
without any obligation to take any action.

NORTH CAROLINA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT   Form 3834   1/01
NC1104-3  4/20/00 Original (Recorded)   Copy (Branch)   Copy (Customer) Page 9 of 12

CARLA R COURTNEY                                                    05/29/2010

17. Borrower's Copy. Borrower shall be given one copy of the Note and of this Security Instrument.

18. Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

19. Borrower's Right to Reinstate After Acceleration. If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. Sale of Note; Change of Loan Servicer; Notice of Grievance. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

NORTH CAROLINA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT   Form 3034   1/01
NC3034/6-9  4/01(6)Original (Recorded)   Copy (Branch)   Copy (Customer)(10 of 12

CARLA R COURTNEY

05/29/2010

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert in the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, and if it is determined in a hearing held in accordance with Applicable Law that Trustee can proceed to sale, Trustee shall take such action regarding notice of sale and shall give such notices to Borrower and to other persons as Applicable Law may require. After the time required by Applicable Law and after publication of the notice of sale, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, Trustee's fees of 5% of the gross sale price; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it. The interest rate set forth in the Note shall apply whether before or after any judgment on the indebtedness evidenced by the Note.

NORTH CAROLINA—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3034    1/01
NC3004.1 6/2010original(Recorded)    Copy(Branch)    Copy(Customer)    Page 11 of 12

CARLA R COURTNEY                                          05/29/2010

23. **Release.** Upon payment of all sums secured by this Security Instrument, Lender or Trustee shall cancel this Security Instrument. If Trustee is requested to release this Security Instrument, all costs evidencing debt secured by this Security Instrument shall be surrendered to Trustee. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. **Substitute Trustee.** Lender may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder by an instrument recorded in the county in which this Security Instrument is recorded. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

25. **Attorneys' Fees.** Attorneys' fees must be reasonable.

BY SIGNING UNDER SEAL BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)
CARLA R. COURTNEY      - Borrower

_____ (Seal)
                       - Borrower

STATE OF NORTH CAROLINA, _____UNION_____ County ss:

I, _____Sarah B. Yanoff_____, a Notary Public of the County of _____UNION_____, State of North Carolina, do hereby certify that _____Carla R. Courtney_____ personally appeared before me this day and acknowledged the due execution of the foregoing instrument.

Witness my hand and official seal this 29TH day of MAY, 2010.

My Commission expires:

_____
Notary Public

STATE OF NORTH CAROLINA - COUNTY OF _____

This instrument was presented for registration this day and hour and duly recorded in the office of the Register of Deeds of _____ County, North Carolina, in Book _____, Page _____.

This the _____ day of _____, _____, at _____ o'clock _____.M.

_____
Register of Deeds

NORTH CAROLINA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT   Form 3834   1/01
NC1103M-3 4/2010 Original (Recorded)    Copy (Branch)      Copy (Customer) page 13 of 13

6126
0856

FILED ELECTRONICALLY
UNION COUNTY NC
CRISSA CRISP

FILED        Nov 04, 2013
AT           10:12:00 AM
BOOK         06126
PAGE         0856
INSTRUMENT # 08091
DOCUMENT #   27854
EXCISE TAX : $0.00

When Recorded Return To:
CitiFinancial, Inc.
C/O NTC 2100 Alt. 19 North
Palm Harbor, FL 34683

CFPA Delaney ID

## CORPORATE ASSIGNMENT OF DEED OF TRUST

Submitted electronically by Nationwide Title Clearing, Inc. in compliance with North Carolina statutes governing reproducible documents and the terms of the submitter agreement with the UNION County Register of Deeds.

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, CFPA RECEIVABLES (DE), INC. F/K/A CITIFINANCIAL SERVICES, INC., A DELAWARE CORPORATION, WHOSE ADDRESS IS 300 ST. PAUL PLACE, LEGAL DEPARTMENT, 17TH FLOOR, BALTIMORE, MD, (ASSIGNOR), by these presents does convey, grant, assign, transfer and set over the described Deed of Trust together with all interest secured thereby, all liens, and any rights due or to become due thereon to CITIFINANCIAL SERVICING LLC, A DELAWARE LIMITED LIABILITY COMPANY, WHOSE ADDRESS IS 300 ST. PAUL PLACE, LEGAL DEPARTMENT, 17TH FLOOR, BALTIMORE, MD 21202 (ASSIGNEE), ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE).

Said Deed of Trust executed by CARLA R. COURTNEY to CITIFINANCIAL SERVICES, INC. is the amount of $47,100.82, was recorded as Instrument # 13491, and/or Book 03341, Page 0836, in the office of the Recorder of UNION County, North Carolina.

Dated this 31st day of October in the year 2013
CFPA RECEIVABLES (DE), INC. F/K/A CITIFINANCIAL SERVICES, INC., A DELAWARE CORPORATION

_____
NADINE HOMAN
VICE PRESIDENT

All Authorized Signatories whose signatures appear above are employed by NTC and have reviewed this document and supporting documentation prior to signing.

STATE OF FLORIDA
COUNTY OF PINELLAS

The foregoing instrument was acknowledged before me on this 31st day of October in the year 2013, by Nadine Homan as VICE PRESIDENT for CFPA RECEIVABLES (DE), INC. F/K/A CITIFINANCIAL SERVICES, INC., A DELAWARE CORPORATION, who, as such VICE PRESIDENT being authorized to do so, executed the foregoing instrument for the purposes therein contained. He/she/they is (are) personally known to me.

_____
NICOLE BALDWIN - NOTARY PUBLIC
COMM EXPIRES: 08/05/2016

Document Prepared By: K.Lennon/NTC, 2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152
CFPAV 22105010 - BK AND PG 1   N   DOCR 73013102714 (C-1) SFR3CNC1

Submitted electronically by Nationwide Title Clearing
in compliance with North Carolina statutes governing reproducible documents
and the terms of the submitter agreement with the Union County Register of Deeds.

**Post Petition** ████████████

| Payment Due Date | Note Rate | Payment Amount | Principal | Interest | Reserve | Impound | Other | Unp. Int. | Acc Late Chg | Unpaid Int Balance | Principal Balance |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 09/04/2017 | 5.0004% | $ 181.68 | $ 0.00 | $ 181.68 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 43,600.15 |
| 10/04/2017 | 5.0004% | $ 181.68 | $ 0.00 | $ 181.68 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 43,600.15 |
| 11/04/2017 | 5.0004% | $ 181.68 | $ 0.00 | $ 181.68 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 43,600.15 |
| 12/04/2017 | 5.0004% | $ 181.68 | $ 0.00 | $ 181.68 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 43,600.15 |
| 01/04/2018 | 5.0004% | $ 181.68 | $ 0.00 | $ 181.68 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 43,600.15 |
| 02/04/2018 | 5.0004% | $ 181.68 | $ 0.00 | $ 181.68 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 43,600.15 |
| 03/04/2018 | 5.0004% | $ 181.68 | $ 0.00 | $ 181.68 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 43,600.15 |
| 04/04/2018 | 5.0004% | $ 181.68 | $ 0.00 | $ 181.68 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 43,600.15 |
| 05/04/2018 | 5.0004% | $ 181.68 | $ 0.00 | $ 181.68 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 43,600.15 |
| 06/01/2018 | 5.0004% | $ 163.51 | $ 0.00 | $ 163.51 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 43,600.15 |
| | | $ 1,798.63 | $ 0.00 | $ 1,798.63 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | | |

| Property List |
|---|
| 3708 SECREST SHORTCUT RD, MONROE NC 28110 |

| Itemization of Other Fees | |
|---|---|
| Description | Amount |
| Demand Fee | $0.00 |
| Recording Fee | $0.00 |
| Reconveyance Fee | $0.00 |
| | $0.00 |